1

2

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

3      STEVEN FITZPATRICK

4            Plaintiff

                                                              **Civil No. 09-1262 (SEC)**

5      v.

6      BRIAN "HANK" STEPHEN, et al.,

7            Defendants.

8                                      **OPINION AND ORDER**

9          Pending before the Court is Co-defendant American Home Assurance Company's

10   ("American Assurance") unopposed motion for summary judgment (Dockets ## 29, 34-35).

11   After reviewing the record and the applicable law, the motion is **GRANTED**.

12         **Procedural and Factual Background**

13         This is a diversity tortsuit that arises out of a head injury that Steven Fitzpatrick, a surfer

14   with over 25 years of experience and a professional sport-action photographer, allegedly

15   suffered while taking pictures from the water at a surfing event in Rincon, Puerto Rico.

16   Complaint, Docket # 1, ¶¶ 3.2, 3.4, 3.9.  Defendants are Brian Stephen ("Stephen"), a Hawaii

17   resident who is also a professional photographer specializing in surfing events (Id. at ¶ 2.2),

18   Source Interlink Companies, Inc. ("Interlink"), a Florida publishing company which allegedly

19   employed Stephen (Id. at 2.3), and American Assurance, Interlink's insurance provider.

20   Amended Complaint, Docket # 9, ¶ 2.4.

21         As explained in detail below, to adjudicate the present motion, the Court must determine

22   whether Puerto Rico's vicarious liability statute applies against Interlink. The procedural

23   nuances leading up to this juncture are easily summarized. A month after Fitzpatrick filed suit,

24   Interlink filed bankruptcy for unrelated reasons, and the claim against it was voluntarily

25   dismissed without prejudice. Dockets ## 5, 7. Soon thereafter, Fitzpatrick amended his

26

**CIVIL NO. 09-1262(SEC)**                                                                            **page 2 of 7**

complaint to include American Assurance, alleging that it had provided Interlink with an insurance policy that covered the events underlying this suit. Docket # 9. As to Stephen, default was entered because he never answered the complaint or appeared in the case. Docket # 22.

The relevant, uncontested facts are also straightforward.[1] Stephen is a freelance photographer who operates under the trade-name Hank Fotos. American Assurance Amended Statement of Uncontested Facts, Docket # 34, ¶ 1. As such, he sells his photographs to several worldwide publications, and his work has been exposed in galleries. Id. at ¶ 2. Stephen chooses and finances his own assignments. Id. at ¶ 5. When his work is selected for publication, Stephen generally receives processing fees and expenses as compensation. Id. at ¶ 10.  The invoices Stephen  uses to evince these expenses generally state that his photos are copyrighted and that his approval is needed to reproduce them. Id. at ¶ 9.

In 2007, Interlink began paying Stephen a monthly retainer to have a right of first refusal for photographs marketed under his trade-name. Id. at ¶ 8  Interlink never withheld income or social security taxes from Stephen's monthly retainer nor provided benefits such as health insurance, life insurance, retirement, sick leave, or vacations. Id. at ¶ 11.  Neither did Interlink provide Stephen with a W-2 Internal Revenue Service Form. Id. at ¶ 12. Nevertheless, because Stephen contributed photographs to Interlink for various years, it listed Stephen as a staff photographer on its magazine's masthead. Id. at ¶ 6.  Interlink followed the same practice with other freelance photographers whose work was selected for publication. Id. at ¶ 7.

---

[1]  As stated above,  Stephen defaulted in this case. Since American Assurance does not dispute Fitzpatrick's head injury or his account as to how it occurred, the Court accepts the complaint's properly pleaded, uncontroverted allegations regarding this issue. Moreover, the Court's findings of fact were somewhat limited by the emaciated Statement of Uncontested Facts American Assurance provided.

**CIVIL NO. 09-1262(SEC)** **page 3 of 7**

On March 20, 2008, Stephen and Fitzpatrick were at Tres Palmas Beach in Rincon to photograph a surfing competition. Amended Complaint, ¶¶ 3.4, 3.5. During the event, Stephen took photos atop a personal water craft, while Fitzpatrick used a surfing board to do the same nearby. Id. At some point during the competition, Stephen's water craft hit Fitzpatrick's head, causing an open injury which required several stitches and other medical attentions. Id. at ¶¶ 3.9 - 3.14. Four days to the year later, Fitzpatrick filed this suit, claiming that Stephen negligently caused his injury and that Interlink responded vicariously because Stephen worked at the event as its staff photographer. Id. at ¶¶ 4.1 - 4.2.

American Assurance moved for summary judgment in August 2010. Its motion does not dispute the validity or coverage of Interlink's insurance policy nor Fitzpatrick's injuries; rather, American Assurance challenges the legal theory underpinning Fitzpatrick's claim against Interlink. Docket 29, ¶ 2. Specifically, American Assurance argues that Interlink never employed or independently contracted with Stephen, and that he appeared at the Rincon event without any knowledge, instructions, financial support, or any other input from Interlink. Id. at p. 8.

**Standard of Review**

The Court may grant a motion for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248(1986); Ramírez-Rodríguez v. Boehringer Ingelheim Pharmaceutical, Inc., 425 F.3d 67, 77 (1st Cir. 2005). A factual issue is material when it could affect the outcome of the suit. Irizarry v. Corporacion Insular de Seguros, 111 F.3d 184, 187 (1st Cir. 1997). "A factual issue is 'genuine' if 'it may reasonably be resolved in favor of either party and, therefore, requires the

**CIVIL NO. 09-1262(SEC)**                                                    **page 4 of 7**

finder of fact to make 'a choice between the parties' differing versions of the truth at trial.'" DePoutout v. Raffaelly, 424 F.3d 112, 116 (1st Cir. 2005).

In exercising its discretion at the summary judgment stage, the Court may not weigh the evidence. Casas Office Machs., Inc. v. Mita Copystar Am., Inc., 42 F.3d 668, 684 (1st Cir. 1994). The Court must examine the "record in the light most flattering to the non-movant and indulge all reasonable inferences in the party's favor." Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994). When summary judgment is unopposed, however, the facts movant offers, if properly supported, "shall be deemed admitted...." L.Cv.R. 56(e). "This, of course, does not mean the unopposed party wins on summary judgment; that party's uncontested facts and other evidentiary facts of record must still show that the party is entitled to summary judgment." Torres-Rosado v. Rotger-Sabat, 335 F.3d 1, 4 (1stir. 2003). In other words, "even where a motion for summary judgment is unopposed, a district judge is still bound to review the case on the merits based on the uncontroverted facts before him." Cordi-Allen v. Halloran, 470 F.3d 25, 28 (1stir. 2006). Summary judgment is proper only if warranted under applicable law. Id.

**Applicable Law and Analysis**

A federal court sitting in a diversity case must apply the substantive law of the forum where the action is filed. Semtek Int'l. Inc. v. Lockheed Martin Corp., 531 U.S. 497, 498 (2001). Therefore, the applicable law to this case is that of the Commonwealth of Puerto Rico. The Puerto Rico Civil Code establishes that a "person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done." P.R. Laws Ann. tit. 31, § 5141.[2]  The Civil Code also encompasses the principle of vicarious liability by

---

[2] Since Stephen defaulted, and because American Assurance does not dispute Fitzpatrick's allegations as to Stephen's conduct, the Court's analysis assumes that Stephen did in fact negligently cause Fitzpatrick's injuries.

**CIVIL NO. 09-1262(SEC)**                                                    **page 5 of 7**

which principals respond for the negligent acts or omissions of employees. P.R. Laws Ann. tit.

31, § 5142.[3] Accordingly, as American Assurance states, Interlink would respond for Stephen's

acts at the Rincon event only if he was its employee at the time.

The Puerto Rico Supreme Court employs a multifactor analysis to determine whether

an individual is a principal's employee. See Avon Products, Inc. v. Secretario del Trabajo, 105

P.R.Dec. 803 (1977). Although the circumstances of each case dictate the factors included in

the analysis, the controlling factors can be generally described as follows:

> 1. The nature, extent or degree of control, or the right to direct and
> control the worker, whether or not such right is exercised;
>
> 2. If the work performed by the worker falls within the business of the
> employer and is not of a different nature;
>
> 3. The right by both parties to terminate the relationship at any time;
>
> 4. The kind of investment required by the employer, if any, to assist the
> worker in performing the work;
>
> 5. If the worker can delegate his performance of the work or services;
>
> 6. Whether the necessary equipment, materials and assistance in doing
> the business is provided for by the employer;
>
> 7. The degree of initiative or judgment displayed by the worker in his
> business;
>
> 8. The worker's possibility of generating either profits and losses in his
> business;

---

[3] Under Puerto Rico law, an independent contractor's negligent acts and omissions can also give rise to vicarious liability under certain circumstances. See Pons-Anca v. Engebretson, 160 P.R.Dec. 347 (2003). Here, however, Fitzpatrick's complaint failed to allege that Stephen was Interlink's independent contractor, and the record before the Court is devoid of evidence to make such a determination. Furthermore, if certain conditions are met, Puerto Rico law imposes direct liability on a principal for the negligent acts or omissions of its agent. See, e.g., Ortiz v. Sucn. Serralles, 89 P.R.Dec. 419, 423-424 (1963); Loiza Sugar Company v. Zequeira, 63 P.R.Dec. 864 (1944). Nevertheless, Fitzpatrick's complaint also lacked allegations of this sort.

**CIVIL NO. 09-1262(SEC)**                                                          **page 6 of 7**

9. If the worker has an independent business which contracts with the employer; and

10. The economic dependence the worker has on the employer.

Lugo v. Mathew Bender & Co., Inc., 579 F.Supp. 638, 641-42 (D.P.R. 1984), citing Avon Products, Inc.,105 P.R.Dec. at 808. The analysis' aim is to establish "the degree of control, and the actual authority that the principal has over the worker so as to intervene directly to supervise and evaluate his performance." Lausell-Archilla v. Hertas-Nieves, 56 F.Supp. 2d 163, 167 (D.P.R. 1999), citing Flores-Roman v. Ramos Gonzalez, 127 P.R.Dec. 601, 608-609 (1990). For example, saleswomen have been deemed employees where they (i) could sell only on company preassigned territories; (ii) took sale orders on the company's behalf; (iii) were subjected to the company's supervisorial regime; (iv) were paid by commission directly from the company; (v) made no financial investment whatsoever; and (iv) could not profit from the goodwill of their business. See Avon Products, 105 P.R.Dec. at 808-813.

Similarly, the First Circuit examines several factors to draw the line between employees and nonemployees for the application of federal statutes. See Dykes v. DePuy, Inc., 140 F.3d 31, 37 (1st Cir. 1998). For example, in Dykes, a case under the Americans with Disabilities Act, the Appellate Court underscored the following factors to conclude that a salesman was not an employee:

> Dykes enjoyed broad control over his day-to-day business: he set his own hours, paid his own salary, and decided where and when to make sales calls. [He did not have] to report regularly to a corporate headquarters.... [He] conducted business through [his] own corporate entities and [was] paid on a commission basis. [He] received Form 1099s rather than W-2s for federal tax purposes.

Id. at 38. Under this test, the nature and degree of the principal's control over the job's performance is also the crux of the analysis. See Eisenberg v. Advance Relocation & Storage, Inc., 237 F.3d 111, 114 (1st Cir. 2000).

**CIVIL NO. 09-1262(SEC)**

In the case at bar, the record shows that Interlink enjoyed no control over Stephen or his enterprise. As stated above, Stephen had unfettered discretion to select the events he would cover, the type of photographs he would take, and the process he would use to develop them. The same holds true about the equipment, materials and the necessary means of production for Stephen's work. And if it became necessary to protect and control his work product, Stephen could unilaterally do so through his trade-name and copyrights.

Moreover, because Stephen financed his work without knowing whether Interlink or other publishers would purchase his pictures, he independently bore the risks associated with the enterprise. When his risk taking paid off, the marketability of Stephen's trade-name, the value of his copyrighted photographs, and the goodwill of his enterprise would undoubtedly increase; when it did not, however, Stephen would bear the financial burdens alone. In sum, the record shows that Stephen's activities were part of an independent enterprise to which Interlink was nothing more than a costumer. This conclusion is buttressed by the fact that Interlink never (i) withheld from Stephen's payments amounts employers are legally required to retain; or (ii) provided Stephen with fringe benefits or a W-2 form.

**Conclusion**

Based on the foregoing, the Court finds that Stephen was not Interlink's employee, and, as a result, American Assurance's Summary Judgment Motion is **GRANTED**. Fitzpatrick's claims against American Assurance are therefore **DISMISSED with prejudice**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 18th day of October 2010.

s/ *Salvador E. Casellas*
Salvador E. Casellas
U.S. Senior District Judge